UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HUA LIN,

              Plaintiff,              1:11-cv-1186
                                                  (GLS/RFT)
           v.

NEW YORK STATE
DEPARTMENT OF LABOR et al.,

              Defendants.
_____

APPEARANCES:                          OF COUNSEL:

**FOR THE PLAINTIFF:**
Smith, Hoke Law Firm            JOHN J. HOKE, ESQ.
18 Corporate Woods Boulevard
Suite 202
Albany, NY 12211

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN    KRISTEN M. QUARESIMO
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Hua Lin commenced this action against defendants New York State Department of Labor (DOL) and Jackie Simmons, alleging

employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and New York Executive Law § 296 ("Human Rights Law").[2] (Compl., Dkt. No. 1.)  Pending before the court is defendants' motion for summary judgment, (Dkt. No. 24), on the grounds that Lin's termination was based on permissible criteria, and that Lin cannot state claims of hostile work environment discrimination or retaliation.  (*Id.*, Attach. 2 at 5-25.)  For the reasons that follow, defendants' motion is granted.

## II. **Background**[3]

Lin was employed as a Senior Employment Security Clerk (SESC) at DOL's Unemployment Insurance Telephone Claim Center (TCC) beginning in August 2008.  (Defs.' Statement of Material Facts (SMF) ¶ 2, Dkt. No. 24, Attach. 1.)  As an SESC, Lin was responsible for performing administrative tasks related to claims for unemployment insurance, and

---

[1] 42 U.S.C. §§ 2000e–2000e-17.

[2] Title VII claims and claims of employment discrimination under the New York State Human Rights Law are governed by the same legal standards.  *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996).  Thus, Lin's state law discrimination claims survive or fail on the same basis as her Title VII claims.

[3] Unless otherwise noted, the facts are not in dispute.

speaking with claimants over the telephone, particularly Chinese-speaking callers, as Lin was of Chinese national origin and could speak Chinese. (*Id.* ¶¶ 3, 9.) During Lin's employment, she was directly supervised by Simmons. (*Id.* ¶ 8.)

Beginning in September 2008, Lin received several monthly and annual performance evaluations. (*Id.* ¶ 17.) Monthly evaluations were issued to Lin for her performance in the months of September 2008, October 2008, November 2008, February 2009, March 2009, April 2009, May 2009, June 2009, and July 2009. (*Id.* ¶¶ 17-44, 52-56; Dkt. No. 24, Attach. 15 at 12-32.) Lin and defendants disagree on their characterizations of these evaluations. Defendants note that these evaluations indicate that Lin required a high amount of supervision and needed improvement in several areas. (Defs.' SMF ¶¶ 18-29.) Lin concedes that these evaluations contained both positive and negative comments regarding her work performance, but asserts that they reflect a generally satisfactory evaluation of her performance. (*Id.*) Lin also received an annual evaluation covering her full first year of employment, in which she was rated overall "satisfactory." (Dkt. No. 27, Attach. 10 at 1-3.)

In January 2010, Lin became a probationary employee, and she was

issued three probationary period performance evaluations in June 2010, July 2010, and September 2010. (Dkt. No. 24, Attach. 16 at 2-3, 7-8, 10-11.) These reviews indicated that Lin's work performance had not improved, and in fact had worsened. (*Id.*) The "summary rating" in each of Lin's three probationary period performance evaluations was either "needs improvement" or "unsatisfactory." (*Id.*) Lin was found to be making an "unacceptabley [sic] high rate of errors and frequently giv[ing] inaccurate information to claimants," "fail[ing] to follow policy and procedure when dealing with claimants," and "not demonstrat[ing] the type of concentration and focus that is needed to complete her work accurately and efficiently." (*Id.* at 10.) In response to the June 2010 evaluation, Lin wrote a letter to her supervisor(s) in which she noted "[i]t was true recently I couldn't concentrate well on my job and lacked some patience towards claimants," and that she would "keep working on improving [her] quality of work." (*Id.* at 4-5.)

During roughly this same time period, Lin alleges that Simmons began engaging in abusive and harassing conduct towards her. (Pl.'s Statement of Material Facts (SMF), Dkt. No. 27, Attach. 20 ¶¶ 4-10.) Lin alleges that Simmons routinely commented on and mocked her use of the

4

English language and her accent, screamed at Lin while she was on telephone calls with claimants, and told Lin that she expected her to work harder because "she understood that the Chinese are hard workers." (*Id.* ¶¶ 5, 8-10, 14.) Lin asserts that, prior to her June 2010 evaluation, she had orally requested that Simmons refrain from speaking to her using a mocking tone and using stereotypes. (Defs.' SMF ¶ 46.)

Shortly after Lin's 2010 work evaluations, management at DOL began discussing terminating Lin's employment; specifically, an August 6, 2010 email from Diane Taylor to Simmons, Theodore Yankovich, and Charles Fusco indicates that they "will recommend termination if there's no improvement," and also includes a request for the paperwork that will be needed "when requesting [Lin's] termination." (Dkt. No. 27, Attach. 7 at 1-2.) Lin does not contest that the decision to terminate her was made on August 6. (Defs.' SMF ¶ 51; Pl.'s SMF ¶ 27.)

On August 12, 2010, Lin wrote a letter to Yankovich and Fusco, in which she claimed that her recent evaluations were "unfair," and asserted that Simmons "discriminates against me of [sic] my part time work status and my English." (Defs.' SMF ¶ 45; Dkt. No. 24, Attach. 12 at 1-3.). On August 18, Lin sent an email to the TCC supervisors in which she again

5

stated that Simmons' behavior was "unfair," and that she would "keep looking into [sic] next level to solve the problem," but that she was not filing "a complaint." (Dkt. No. 24, Attach. 11 at 7.) The supervisors subsequently held a meeting with Lin to discuss her concerns, at which time Lin stated that she did not blame Simmons, but simply felt that her evaluations were unfair. (*Id.* at 14.) On August 23, 2010, Lin sent an email to Fusco, Yankovich, and Taylor, in which she notified them that she had spoken to the New York State Division of Human Rights (DHR) and "was informed that [Simmons] discriminated against [her on account of] race and national origin," and that this would be her "last attempt to resolve this problem internally." (*Id.* at 16.)

In September 2010, Lin was terminated, the stated basis being her poor work performance. (Defs.' SMF ¶ 57.) Thereafter, Lin filed written charges of employment discrimination with the Equal Employment Opportunity Commission (EEOC) and was issued a "Right to Sue" letter by the EEOC. (Compl. ¶ 24.) Lin commenced this action on October 4, 2011. (*See generally* Compl.) Following joinder of issue, (Dkt. No. 8), defendants moved for summary judgment, (Dkt. No. 24). That motion is currently pending before the court.

6

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

#### A. Disparate Treatment

Lin alleges that she was "treated differently than similarly situated non-Chinese employees," and was therefore discriminated against on the basis of her "race, national origin and/or ethnicity." (Compl. ¶¶ 27-28.) In their motion, defendants assert that they are entitled to summary judgment on this claim because defendants had a legitimate, non-discriminatory basis for terminating Lin, namely her poor work performance, and Lin has not established that this stated basis for her termination was a pretext for discrimination. (Dkt. No. 24, Attach. 2 at 5-12.)

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms,

7

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting rules, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To satisfy this initial burden, the plaintiff "'must show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'" *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

"A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted). If the defendant proffers a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out

of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Ultimately, once the burden shifts back to the plaintiff, she must show, "without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination." *Holcomb*, 521 F.3d at 138. The plaintiff must demonstrate by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This showing may be made "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *see Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180–81 (2d Cir. 1992). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

Assuming, without deciding, that Lin has established a prima facie

case,[4] defendants have proffered a legitimate, non-discriminatory justification for her termination, namely her poor work performance. Beginning with her June 2010 performance evaluation, Lin's reviews became increasingly negative, as she was making an increasing number of mistakes, was not following policies and procedures when dealing with claimants, and was having difficulty concentrating on her work. (Dkt. No. 24, Attach. 16 at 2-3, 7-8, 10-11). Lin even conceded as much in her response to the June 2010 evaluation. (*Id.* at 4-5.)

Lin's disparate treatment claim therefore ultimately turns on the last step of the burden-shifting analysis, specifically whether she has established that the stated reason for her termination was merely a pretext, and that the true reason for her termination was discriminatory. In arguing against summary judgment on this point, Lin focuses on the performance evaluations themselves, claiming that the evaluations were "clearly biased and aimed at justifying a pre-determined decision to fire [Lin]." (Dkt. No. 27, Attach. 21 at 5.) Lin argues that some of the bases defendants used to

---

[4] The court notes that, while defendants do not concede that Lin has established a prima facie case of discrimination, they have not in their motion argued this point, (Dkt. No. 24, Attach. 2 at 6), and the court has therefore not addressed this.

10

determine her work performance, such as her high rate of error and her low number of calls taken per day, were improper justifications for her termination because defendants had not established or circulated objective standards by which Lin could be compared to other employees. (*Id.* at 7-9.) Lin concludes that these "are obviously a mere pretext for the true, discriminatory reasons behind [Lin's] termination." (Dkt. No. 27, Attach. 21 at 9.) However, Lin has failed to come forth with any affirmative evidence that, without the benefit of the presumption of discrimination, links the decision to terminate her to her national origin, beyond her own conclusory, speculative assertions. *See Holcomb*, 521 F.3d at 137 ("[I]n the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); *Schwapp*, 118 F.3d at 110. Therefore, Lin has failed to meet her burden at the final step of the burden shifting analysis, and summary judgment against her on this claim is thus appropriate.

**B.     Hostile Work Environment**

Lin's next claim is that she "was exposed to an objectively and subjectively hostile work environment" as a result of "offensive language and innuendo regarding [Lin's] race, national origin and/or ethnicity,"

11

engaged in by Simmons. (Compl. ¶¶ 30-33.) Defendants assert that they are entitled to summary judgment on this claim because the offensive comments allegedly made by Simmons are insufficiently severe or pervasive to reach the level of a hostile work environment. (Dkt. No. 24, Attach. 2 at 19-23.)

Where a discrimination claim is predicated on the existence of a hostile work environment, the plaintiff must demonstrate that the conduct in question: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012) (internal quotation marks omitted). In determining whether a hostile work environment claim has been established, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012)

(internal quotation marks and citation omitted).

Here, while Lin has alleged that Simmons made "frequent and persistent comments and innuendo regarding [her] race and national origin," (Compl. ¶ 14), which occurred "on a daily basis," (Pl.'s SAMF ¶ 5), the record evidence does not corroborate such an allegation. Notably, Lin's own deposition testimony contradicts these allegations and does not establish an environment sufficient to constitute a hostile work environment. For example, Lin testified that Simmons was impatient and critical, (Dkt. No. 24, Attach. 7 at 22), had a "mean personality," (Dkt. No. 24, Attach. 8 at 13), and would yell at her when she made mistakes on the phone with claimants, (*id.* at 20). While perhaps unpleasant, Lin has not demonstrated that these instances were "because of [her] . . . protected characteristic." *Robinson*, 495 F. App'x at 141 (internal quotation marks and citations omitted).

Although Lin does bring forth a few instances of potential harassment based on her national origin, Lin's deposition testimony does not corroborate her allegations that such harassment occurred frequently and persistently. For example, Simmons told Lin she "[had] an English problem," (Dkt. No. 24, Attach. 8 at 13), and that "Chinese people work

13

hard and [she] should work harder," (*id.* at 26). When then asked what other comments Simmons made regarding her ethnicity, Lin replied that "one day . . . [Simmons] suddenly told me very loudly that [a claimant] doesn't understand your English, you should not say automatic system, you should say automated system," and that this was the only other incident Lin could recall of Simmons referencing her ethnicity. (*Id.* at 28.)

When asked if Simmons made any comments regarding her Chinese accent, Lin replied that Simmons criticized her for having an "English problem," but noted that this was a "communication problem" with Simmons not understanding Lin's English. (*Id.* at 28-29.) Lin also stated that in one instance, following a disagreement between Lin and Simmons, Lin overheard Simmons refer to her as "nasty Chinese people." (Dkt. No. 24, Attach. 10 at 3-5.) However, she was not able to recall hearing any additional jokes by anyone in TCC about another's color or national origin. (*Id.* at 2.)

These isolated incidents of Simmons' harsh conduct towards Lin do not rise to the level of a hostile work environment. The Second Circuit has held that for claims of hostile work environment, the plaintiff "must prove more than a few isolated incidents of racial enmity." *Snell v. Suffolk Cnty.*,

14

782 F.2d 1094, 1103 (2d Cir. 1986); *see Schwapp*, 118 F.3d at 110 ("[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobious racial comments"). Despite Lin's allegations to the contrary, her testimony and the other record evidence fail to establish that Simmons' conduct was sufficiently severe or pervasive to constitute a hostile work environment. Therefore, Lin's hostile work environment claim is dismissed.

**C.    Retaliation**

Lin also alleges that defendants issued "grossly unfair evaluations of [Lin's] performance," and ultimately terminated her in retaliation for Lin's complaints regarding the treatment she was receiving. (Compl. ¶¶ 36-40.) Defendants assert that Lin's retaliation claim must fail because she did not engage in protected activity, she cannot establish a causal connection between her complaints and any adverse action taken against her, and defendants had a legitimate, non-discriminatory basis for their actions. (Dkt. No. 24, Attach. 2 at 12-19.)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [that employee] has opposed any practice made an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or

15

participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001). If the plaintiff sets out a prima facie case, then the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory rationale for its actions. *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir. 1991). If the defendant proffers a legitimate, non-retaliatory reason, the burden of production then shifts back to the plaintiff to introduce evidence that the defendant's reason was a pretext for retaliation. *Id.*

Defendants argue that Lin has not established a prima facie case of Title VII retaliation because she has not engaged in a "protected activity." (Dkt. No. 24, Attach. 2 at 13-17.) For a plaintiff's actions to constitute a protected activity, she must have had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy*, 241 F.3d at 283 (quoting *Manoharan v. Columbia Univ. Coll.*

16

*of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). "Mere complaints of unfair treatment by an individual are not protected speech under Title VII." *McNutt v. Nasca*, No. 1:10-CV-1301, 2013 WL 209469, at *16 (N.D.N.Y. Jan. 17, 2013) (internal quotation marks and citation omitted). The speaker must make clear to the employer that she is complaining of unfair treatment due to her membership in a protected class and that she is not complaining merely of unfair treatment generally. *See Dinice-Allen v. Yale-New Haven Hosp.*, No. 3:06CV00675, 2008 WL 160206, at *4 (D. Conn. Jan. 10, 2008). While a plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity. *See Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009); *Woods v. N.M.C. Labs.,* No. 93-CV-2908, 1997 WL 1038873, at *2 (E.D.N.Y. July 14, 1997), *aff'd*, 162 F.3d 1149 (2d Cir. 1998).

Here, Lin asserts in her opposition to defendants' motion that her complaints "clearly indicated that she was objecting to her treatment based on her membership in a protected class." (Dkt. No. 27, Attach. 21 at 11.) However, Lin's own deposition testimony contradicts this assertion. Lin

17

testified that her August 23, 2010 email to Fusco, Yankovich, and Taylor, (Dkt. No. 24, Attach. 11 at 16), after speaking to DHR, was the first time she believed she was being discriminated against because of her national origin, and that she "was not sure what was the problem before," (*id.*, Attach. 8 at 33). While Lin asserts that she orally complained to Simmons before this time, she simply indicates that she "eventually requested that Simmons stop addressing [her] in [a stereotypical] manner." (Dkt. No. 27, Attach. 18 ¶ 9.) There are no other indications that, prior to her email of August 23, 2010, Lin had clarified to her employer that she was complaining of unfair treatment due to her membership in a protected class and not simply complaining merely of unfair treatment generally. *See Dinice-Allen*, 2008 WL 160206, at *4. This is corroborated by Lin's testimony that her August 23 email was the first time she believed she was being discriminated against because of her national origin. (Dkt. No. 24, Attach. 8 at 33.) Given that the decision to terminate Lin was made on August 6, 2010, (Pl.'s SMF ¶ 51; Pl.'s SAMF ¶ 27; Dkt. No. 27, Attach. 7 at 1-2), and her "protected activity" occurred on August 23, 2010, Lin's retaliation claim must fail.

Even assuming Lin does satisfy the elements of a prima facie

retaliation claim, her claim would fail because she has not met her burden at the final stage of the burden-shifting analysis to come forth with evidence, beyond her own conclusory allegations of discrimination, that defendants' proffered justification for her termination was merely a pretext, and that the true reason was retaliation. *See supra* Part IV.A.; *Schwapp*, 118 F.3d at 110.

D. **State law claims**

Because Lin's Title VII claims are dismissed, her claims pursuant to the New York Human Rights Law fail for the same reasons. *See Schiano*, 445 F.3d at 609.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED** that Lin's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 23, 2013
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court